## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EVEREST INDEMNITY INSURANCE CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:09-cv-01672-RCJ-RJJ |
| ) | |
| AVENTINE-TRAMONTI HOMEOWNERS ) | **ORDER** |
| ASS'N et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This is an interpleader action arising out of claims and potential claims by approximately sixty Defendants against Plaintiff Everest Indemnity Insurance Co. ("Everest"). Pending before the Court is Everest's motion for summary judgment against the Counterclaim of Rising Sun Plumbing, LLC ("Rising Sun"), as well as its motion for sanctions against Rising Sun pursuant to Rule 11. For the reasons given herein, the Court grants the motion for summary judgment but denies the motion for sanctions.

**I.    FACTS AND PROCEDURAL HISTORY**

In connection with a construction project at Fort Apache Road and Gilcrease Avenue in Las Vegas, Nevada, (the "Project"), Everest issued an Owner Controlled Insurance Program Policy (the "Policy") effective May 15, 2003 through May 15, 2006 to Defendant Town Center Ventures, LLC ("TCV"), which covered TCV, as well as contractors and subcontractors.

1  (Compl. ¶¶ 71, 77). The Policy provides $1 million in coverage, subject to a $50,000 "Self
2  Insured Retention." (*Id.* ¶ 73). On or about January 15, 2008, Defendant Aventine-Tramonti
3  Homeowners Association (the "Association") sued TCV and Defendant Cams Construction
4  ("Cams") in state court for alleged construction defects. (*Id.* ¶ 78). Everest undertook the
5  defense of its insureds TCV and Cams and had expended $150,000 in their defense before
6  terminating their defense and filing the present Complaint in interpleader, leaving approximately
7  $850,000 available under the Policy. (*Id.* ¶ 81). The Association made several demands under
8  the Policy and rejected both Everest's own policy-limits settlement offer and a mediator's
9  proposal that included payment of the policy limits, choosing instead to pursue a multi-million-
10 dollar judgment against Everest's insureds. (*Id.* ¶¶ 83–84, 88).

11  Because Everest could potentially have faced rival claims from its insureds under the
12 Policy exceeding the $850,000 remaining under the Policy, it filed the present interpleader
13 action. (*See id.* ¶ 90). Everest sued approximately sixty of its insureds under the Policy,
14 including the Association, TCV, and Cams, on two causes of action pursuant to 28 U.S.C.
15 §§ 1335 and 2201: (1) Interpleader; and (2) Declaratory Relief. Everest deposited $850,000 with
16 the Court registry pursuant to § 1335(a)(2).

17  Several Defendants filed counterclaims, including Rising Sun. (*See* Answer &
18 Countercl., Jan. 8, 2011, ECF No. 231). The Court has released the $850,000 of interpled funds
19 for distribution in accordance with the settlement agreement in the underlying state court action
20 between the plaintiff Association and several contractor defendants in that action (Rising Sun
21 does not appear to be a party to the underlying state court action). Everest has moved for
22 summary judgment against Rising Sun's counterclaims for breach of contract, breach of the
23 covenant of good faith and fair dealing, and declaratory judgment.

24 **II.    LEGAL STANDARDS**

25  A court must grant summary judgment when "the movant shows that there is no genuine

1 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

2 Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson*

3 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if

4 there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See*

5 *id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

6 claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

7 judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

11 *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

12 (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears

13 the burden of proving the claim or defense, the moving party can meet its burden in two ways:

14 (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2)

15 by demonstrating that the nonmoving party failed to make a showing sufficient to establish an

16 element essential to that party's case on which that party will bear the burden of proof at trial.

17 *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden,

18 summary judgment must be denied and the court need not consider the nonmoving party's

19 evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

20    If the moving party meets its initial burden, the burden then shifts to the opposing party

21 to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

22 *Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

23 party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

24 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

25 versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

1  626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment
2  by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v.*
3  *List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions
4  and allegations of the pleadings and set forth specific facts by producing competent evidence that
5  shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp*., 477 U.S. at 324.

6  At the summary judgment stage, a court's function is not to weigh the evidence and
7  determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477
8  U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are
9  to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely
10 colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

11 **III.   ANALYSIS**

12 Everest argues that because it has interpled the undisputed amount remaining on the
13 Policy ($850,000), that Rising Sun cannot be aggrieved by Everest's withdrawal of Rising Sun's
14 defense in the underlying action against it in state court.  Everest argues that Rising Sun was not
15 even a defendant in the state court action when Everest withdrew its representation of its
16 insureds in favor of interpleading the remaining policy limits in the present action.  Everest
17 contends that for both of these reasons, it cannot be liable for breaching the Policy or acting in
18 bad faith thereunder with respect to Rising Sun.  Everest notes that the policy was a "burning
19 limits" policy under which the Policy is exhausted the moment the cumulative costs of any
20 defense or payments under the Policy total $1,000,000.  Rising Sun does not appear to dispute
21 this interpretation but responds that the limits under the Policy do not obviate Everest's duty to
22 defend its insureds until those limits are reached, and that by ceasing its defense, it has caused
23 Rising Sun damages that it would not have sustained had Everest continued its defense.

24 Rising Sun does not appear to allege that it has yet been held liable in any underlying
25 action.  Rising Sun was joined and served as a defendant in the state court action via the third

amended complaint and undertook its own defense in that action on July 27, 2010; on August 3, 2010, Everest refused to defend Rising Sun in the state court action and directed it to request periodic disbursements form the interpled funds in the present case to pay for its defense. (*See* Marquiz Decl. ¶¶ 15–17, Jan. 9, 2011, ECF No. 301-1).  It appears that Rising Sun no longer faces liability in the state court but that there is not enough in the now-disbursed interpled funds to cover Rising Sun's costs of defense in the state court action, and that this is the measure of damages Rising Sun seeks as compensation for Everest's abandonment of Rising Sun's defense.  The Court disagrees and rules that Rising Sun had an obligation to seek reimbursement from the interpled funds.

Interpleader provides the remedy in this situation.  Just as an insured must seek payment for indemnity from the interpled funds once properly interpled, under a burning limits policy, a insured must likewise seek reimbursement for its defense.  The equitable nature of the interpleader remedy is to prevent a party potentially exposed to multiple liability from being held liable for more than it legally can be.  Here, the limits on the policy is $1,000,000 for indemnity and defense together, and once the amount is reached, the insurer's duties under the policy are extinguished.  One such way for an insurer to extinguish its duties are to interplead the policy limits and let a court sort out which parties are entitled to which portion of it.  Rising Sun had ability to request reimbursement for its separate defense from the Court.

Normally, a duty to defend is triggered by the apparent or potential liability of an insured, but it is extinguished only by settlement or judgment, providing insurance companies with a powerful motivation to settle, lest the costs of a defense (which are in theory unlimited) exceed the policy limits for liability.  A "burning limits" policy is different in that both the costs of defense and any amount of settlement or judgment jointly deplete the policy limits.  When the policy limits are exhausted through a combination of settlement, judgment, and defense costs, the duties to indemnify and defend are jointly extinguished.  In other words, a traditional policy

1 has potentially unlimited costs of defense but limited costs of indemnification, whereas a

2 "burning limits" policy, such as in the present case, has a joint limitation on defense and

3 indemnity. Although the Nevada Supreme Court does not appear to have addressed the issue

4 directly, the California Supreme Court has noted that the duty to defend in a "burning limits"

5 policy exists only until the policy is completely depleted:

> We observe that Aerojet may indeed have gotten from the insurers more in defense costs than it could have gotten in indemnification costs. But it got no more that it had a right to: Although indemnification costs were limited by the pertinent policies, defense costs were not. The insurers might perhaps have avoided such a pass, as through the issuance of "self-consuming" or "burning limits" policies, under which the indemnification limit is reduced dollar for dollar by defense costs until zero is reached and the duty to indemnify and the duty to defend are then terminated.

*Aerojet-General Corp. v. Transport Indem. Co.*, 948 P.2d 909, 932 n.29 (Cal. 1997) (citation omitted). In Nevada, "as a general rule, an insurer's duty to defend . . . continues until th[e] potential for indemnification ceases." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011) (citing *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004)). Therefore, interpleader would seem to extinguish the duty to defend, because the potential for indemnification ceases when the policy limits are interpled, after which an insured can no longer reach any assets of the insurer under the policy, but only the interpled funds. The Court will grant the motion for summary judgment but will not award sanctions, as the Counterclaim, though without merit, was not clearly frivolous.

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 297) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Sanctions (ECF No. 320) is DENIED.

IT IS SO ORDERED.

Dated this 13th day of March, 2012.

_____
ROBERT C. JONES
United States District Judge